UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------------- x

BRUCE HAY,                                          :
                                                    :          Case No. 1:20-cv-6135-JPO
                                Plaintiff,          :
                                                    :
                   - against -                      :
                                                    :
NEW YORK MEDIA, LLC and KERA                        :
BOLONIK,                                            :
                                                    :
                                Defendant.          :
------------------------------------------------------------------- x


### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Katherine M. Bolger
Jeremy A. Chase
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 489-8230
Fax:    (212) 489-8340
katebolger@dwt.com
jeremychase@dwt.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 2

I.     The Parties ...................................................................................................... 2

II.    The Articles at Issue........................................................................................ 3

III.   Hay Proposes, Participates in and Promotes the Articles ............................... 4

IV.    Change of Heart .............................................................................................. 5

V.     The Complaint and the First Amended Complaint ......................................... 5

VI.    Defendants' Rule 11 Letter............................................................................. 6

VII.   Hay Withdraws his Defamation Claims and Moves to Amend the Complaint .............. 7

ARGUMENT ............................................................................................................... 8

I.     THE SAC FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.............. 10

   A.   Hay's Breach of Contract Claim Represents an Improper Attempt to Repackage his
        Defamation Claim against New York Media and Bolonik ........................... 10

   B.   The Alleged Contract Violates the Statute of Frauds................................... 15

   C.   Vague Oral Agreements Between Reporters and Sources Are Unenforceable........... 16

II.    HAY FAILS TO STATE A CLAIM FOR SEXUAL HARASSMENT AND GENDER-
        BASED DISCRIMINATION CLAIM UNDER THE NYCHRL AND HIS
        AMENDMENTS ARE FUTILE................................................................... 19

   A.   The New York City Human Rights Law Does not Apply to Conduct Whose Effect Is
        Felt Outside of New York City ................................................................... 19

   B.   The Protections of the New York City Human Rights Law Do not Extend to Sources
        of Articles ................................................................................................. 20

CONCLUSION ........................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aghaeepour v. Northern Leasing Sys., Inc.*,
    378 F. Supp. 3d 254 (S.D.N.Y. 2019)...................................................................................13

*Almeciga v. Center for Investigative Reporting, Inc.*,
    185 F. Supp. 3d 401 (S.D.N.Y. 2016)...........................................................................15, 16

*Anderson New, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012)...........................................................................................8

*Anyawu v. Columbia Broad. Sys., Inc.*,
    887 F. Supp. 690 (S.D.N.Y. 1995) ...............................................................................11

*Armstrong v. Rohm & Haas Co.*,
    349 F. Supp. 2d 71 (D. Mass. 2004) ............................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................9

*Beter v. Murdoch*,
    No. 17cv1024, 2018 WL 3323162 (S.D.N.Y. June 22, 2018)........................................ *passim*

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) (Oetken, J.)................................................................9

*Bose Corp. v. Consumers Union of U.S.*,
    466 U.S. 485 (1984)....................................................................................................14

*Bose Corp. v. Ejaz*,
    732 F.3d 17 (1st Cir. 2013) .........................................................................................10

*Candid Prods., Inc. v. Int'l Skating Union*,
    530 F. Supp. 1330 (S.D.N.Y. 1982)..............................................................................17

*Compuware Corp. v. Moody's Investor Servs.*,
    499 F.3d 520 (6th Cir. 2007) .......................................................................................15

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010)...........................................................................................9

*Faber v. Metro. Life Ins. Co.*,
 648 F.3d 98 (2d Cir. 2011)......................................................................................9

*Foretich v. Advance Magazine Publishers, Inc.*,
 765 F. Supp. 1099 (D.D.C. 1991) ..........................................................................11

*Freydl v. Meringolo*,
 No. 09cv7196, 2013 WL 1285286 (S.D.N.Y. Mar. 29, 2013) ...............................17

*G v. Fay School, Inc. by and through its Board of Trustees*,
 282 F. Supp. 3d 381 (D. Mass 2017), *aff'd,* 931 F.3d 1 (2019)...........................19

*Harte-Hanks Comms. v. Connaughton*,
 491 U.S. 657 (1989)...............................................................................................14

*Hengjun Chao v. Mount Sinai Hosp.*,
 476 F. App'x 892 (2d Cir. 2012) ...........................................................................11

*Henneberry v. Sumitomo Corp. of America*,
 415 F. Supp. 2d 423 (S.D.N.Y. 2006).....................................................................8

*Hughes v. Twenty-First Century Fox, Inc.*,
 304 F. Supp. 3d 429 (S.D.N.Y. 2018)..............................................................21, 22

*Hustler Magazine, Inc. v. Falwell*,
 485 U.S. 46 (1988)..................................................................................10, 11, 13

*John Street Leasehold LLC v. F.D.I.C.*,
 No. 95cv10174, 1998 WL 411328 (S.D.N.Y. July 22, 1998), *aff'd,* 196 F.3d
 379 (2d Cir. 1999)..................................................................................................17

*Krys v. Pigott*,
 749 F.3d 117 (2d Cir. 2014).....................................................................................8

*Kusek v. Family Circle, Inc.*,
 894 F. Supp. 522 (D. Mass 1995) ..........................................................................18

*Legal Aid Soc. v. City of N.Y.*,
 114 F. Supp. 2d 204 (S.D.N.Y. 2000).....................................................................15

*MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*,
 No. 17cv7568, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018) ...............................11

*MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*,
 No. 17cv7568, 2018 WL 847014 (S.D.N.Y. Jan. 12, 2018)....................................11

*New York Times v. Sullivan*,
 376 U.S. 254 (1964)................................................................................................10

*Palin v. N.Y. Times Co.*,
    No. 17cv4853, 2020 WL 7711593 (S.D.N.Y. Dec. 29, 2020)..................................................13

*Pierce v. Clarion Ledger*,
    452 F. Supp. 2d 661 (S.D. Miss. 2006), *aff'd on other grounds*, 236 Fed.
    Appx. 88 (5th Cir. 2007).....................................................................................................18

*Sellers v. Am. Broad. Co.*,
    668 F.2d 1207 (11th Cir. 1982) ..........................................................................................18

*Sibley v. Watches*,
    No. 19cv6517, 2020 WL 3259294 (W.D.N.Y. June 16, 2020) ..............................................13

*Steele v. Isikoff*,
    130 F. Supp. 2d 23 (D.D.C. 2000) ................................................................................17, 18

*Veilleux v. Nat'l Broad. Co.*,
    206 F.3d 92 (1st Cir. 2000)...........................................................................................15, 18

*Wexler v. Allegion (UK) Ltd.*,
    No. 16cv2252, 2018 WL 162346 (S.D.N.Y. Mar. 30, 2018) ................................................11

**State Cases**

*Aretakis v. Hearst Publications*,
    24 Misc.3d 1233(A), at *1-2 (Sup. Ct. N.Y. Cty. 2009).........................................................17

*Corso v. NYC Holdings, Inc.*, 35, Media L. Rep. 2286 (Sup. Ct. N.Y. Cty. Aug.
    30, 2007) ..........................................................................................................................14

*Dee v. Rakower*,
    112 A.D.3d 204 (2d Dep't 2013) ........................................................................................10

*Greenberg v. CBS Inc.*,
    69 A.D.2d 693 (2d Dep't 1979) ..........................................................................................14

*Hoffman v. Parade Publications*,
    15 N.Y.3d 285 (2010) .................................................................................................19, 20

*Huggins v. Moore*,
    94 N.Y.2d 296 (1999) .................................................................................................13, 14

*Hurtubise v. McPherson*,
    951 N.E.2d 994 (Mass. App. Ct. 2011) ...............................................................................17

*Rust Comm'ns Group v. 70 State St. Travel Serv.*,
    122 A.D.2d 584 (4th Dep't 1986) .......................................................................................14

**State Statutes**

Administrative Code of City of NY § 8-101 (NYCHRL) ..................................................... *passim*

Administrative Code of City of NY § 8-107 ................................................................22

Administrative Code of City of NY § 8-107(1).............................................................21

Administrative Code of City of NY § 8-107(23)...........................................................21

Executive Law § 290 (NYSHRL)...................................................................................1, 7, 8

M.G.L.A. 259 § 1 ...........................................................................................................15

N.Y. Gen. Oblig. Law § 5-701(a)(1) ............................................................................15

**Rules**

Federal Rules of Civil Procedure 11 ........................................................................... *passim*

Federal Rules of Civil Procedure 12(b)(6).................................................................8, 9

Federal Rules of Civil Procedure 15(a) ......................................................................8

Federal Rules of Civil Procedure 15(a)(2)..................................................................8

**Constitutional Provisions**

United States Constitution
    First Amendment ................................................................................................. *passim*

**Other Authorities**

https://www.merriam-webster.com/dictionary/freelancer ...........................................21

Defendants New York Media, LLC ("New York Media") and Kera Bolonik ("Bolonik") hereby submit this memorandum of law in opposition to Plaintiff's Motion for Leave to File Second Amended Complaint (the "Motion to Amend") [ECF 31-33].

## PRELIMINARY STATEMENT

This lawsuit stems from the role of Plaintiff Bruce Hay ("Plaintiff" or "Hay") as the principal source – and, indeed the catalyst – for two articles written by Kera Bolonik and published in *New York* Magazine in July and August 2019.  The articles tell of Hay's tumultuous relationship with Maria-Pia and Mischa Shuman, which began with a sexual encounter between Hay and Maria-Pia, and subsequently devolved into reciprocal claims of abuse, a property dispute over Hay's house, and numerous legal proceedings.  The articles also describe Maria-Pia's predatory sexual relationships with other men, and the Shumans' subsequent attempts to use paternity claims to gain leverage over these men.

Hay alleges he was the source for both articles, provided Bolonik and *New York* Magazine with corroborating materials, and promoted the articles and helped Bolonik explore movie and TV deals.  And he alleges that the articles accurately reported the information he provided to them. Nevertheless, Hay has had a change of heart about the Shumans – and while he was not denied that the events in the article happened, he now sees those events as acts of "defiance" by the Shumans against transphobic and misogynist norms.  As a result, Hay sued Defendants for defamation, and brought additional claims against New York Media and Bolonik for breach of contract, and sexual harassment and gender-based discrimination under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL").  Make no mistake, these claims in Hay's First Amended Complaint (the "FAC") [ECF 12] were facially defective.  Indeed, Defendants informed Hay via letter that his claims lacked any factual or legal

1

basis and that they intended to move for costs under Rule 11 of the Federal Rules of Civil Procedure if Hay did not withdraw the FAC (the "Rule 11 Letter").  *See* Ex. 1.[1]  The Rule 11 Letter further informed Hay that his claims fell within the scope of New York's anti-SLAPP statute, and that Defendants would therefore be entitled to attorneys' fees in the likely event that the FAC were found to be without substantial basis in fact and law.  Ex. 1 at 5.

While Hay did voluntarily dismiss the defamation claim with prejudice on January 11, 2021, Hay now files this Motion to Amend and proposed Second Amended Complaint ("SAC") [ECF 32-1] in an attempt to keep alive his patently frivolous breach of contract and NYCHRL claims and to use his filings to smear Defendants.  But the proposed SAC neither bolsters these claims nor cures the legal defects described in the Rule 11 Letter.  Instead, Hay merely bloats his pleadings with scurrilous, irrelevant, and downright incredible allegations about Defendant Bolonik.  The proposed second round of amendments to the complaint do not render Hay's claims viable and are therefore futile.  The Motion to Amend should be denied and the action should be dismissed in its entirety.

## FACTUAL BACKGROUND

### I.    THE PARTIES

Plaintiff Bruce Hay is a professor at Harvard Law School, where he has been on the faculty since 1992 (FAC ¶ 17; SAC ¶ 17), including teaching a class on "Judgment and Decision Making" (FAC ¶ 124; SAC ¶ 138).

---

[1] Ex. 1 references Exhibit 1 attached to the Declaration of Katherine M. Bolger, dated January 22, 2021.

Defendant Bolonik is an experienced writer and editor who wrote the two articles for *New York* Magazine that are at issue in this action.  FAC ¶ 19; SAC ¶ 19.  Defendant New York Media is a subsidiary entity of Vox Media, LLC which owns and publishes *New York* Magazine.[2]

## II.   THE ARTICLES AT ISSUE

Hay's claims all stem from his participation in the production, publication and promotion of an article titled *The Most Gullible Man in Cambridge A Harvard Law Professor Who Teaches a Class on Judgment Wouldn't Seem Like an Obvious Mark, Would He?* ("Article 1").  SAC Ex. A.[3]  Published on July 23, 2019, Article 1 focused on the tumultuous relationship between Hay and two women, Maria-Pia Shuman ("Maria-Pia") and Mischa Schuman ("Mischa," and together with Maria-Pia, the "Shumans").  FAC ¶¶ 10-11; SAC ¶¶ 10-11.  The relationship between Hay and the Shumans was and is marked by reciprocal allegations of abuse and wrongdoing and spawned numerous litigations and other quasi-legal proceedings detailed in Article 1.  FAC ¶ 31; SAC ¶ 30; SAC Ex. B at 19-21.

A second article published two weeks later, on August 8, 2019, is entitled *The Harvard Professor Scam Gets Even Weirder Six Other Men Describe their Encounters with the Same Mysterious Frenchwoman* ("Article 2," and together with Article 1, the "Articles").  FAC ¶ 12; SAC ¶ 12; SAC Ex. A.  Article 2 tells the story of six men who contacted Bolonik after Article 1 was published to discuss their own similar encounters, sexual and otherwise, with Maria-Pia and Mischa.  FAC ¶ 121; SAC ¶ 135.

---

[2] Because *New York* Magazine is owned and published by Vox Media LLC and not New York Media, New York Media is not a proper party to this lawsuit.

[3] The exhibits attached to the SAC are identical to the exhibits attached to the FAC.  All references to exhibits to the SAC are therefore equally applicable to the FAC.

### III.    HAY PROPOSES, PARTICIPATES IN AND PROMOTES THE ARTICLES

As Hay makes clear in the FAC and SAC, he was much more than just a source for the Articles.  Instead, Hay pleads that he played a central role in developing them, by bringing the idea to Defendants and participating in every step of the pre- and post-publication process.  *See* FAC ¶¶ 70-71; SAC 69-70 (Hay approached Bolonik to write the story); FAC ¶ 150; SAC ¶ 171 (Hay acted as "principal source" for Articles); FAC ¶ 6; SAC ¶ 6 (Hay worked closely with Defendants for months on the Articles, including as fact-checker and legal consultant); FAC ¶ 82; SAC ¶ 81 (Hay "gave Bolonik and her editors all of the relevant information and documents that he could, answered their questions and recounted his perceptions of events as accurately as he could, and did everything else in his power to make their work easier.").  Hay even pleads that he corroborated his statements by providing Bolonik with significant documentation.  *See* SAC Ex. B at 23 (Hay shared with Bolonik his Title IX statement, which quoted supporting documents); *id.* at 31 (Hay discussed with Bolonik evidence regarding his criminal complaint); *id.* at 32 (Hay informed Bolonik of the deposition of Mischa's partner, Andrew Klein); *id.* at 36 (Hay gave Bolonik a hearing transcript from Maria-Pia's restraining order action against an individual referred to in the Articles as John Poe); *id.* at 39 (Hay gave Bolonik text messages between Maria-Pia and an individual referred to in the Articles as Richard Roe ("Roe"), and emails between Maria-Pia's attorney and Roe's attorney); *id.* at 39 (Bolonik spent months with Hay learning every detail about the events in question, reviewing documents Hay provided, and probing his recollection of events).

And Hay's involvement did not end there.  Hay pleads that after the publication, he "helped . . . promote the article" and "defend[ed] it from legal attacks."  FAC ¶ 82; SAC ¶ 81.  And finally, he pleads that he "helped Bolonik explore movie and TV deals based on the article, and helped Bolonik begin work on her book based on the article."  *Id.*

4

## IV.     CHANGE OF HEART

Then, suddenly, Hay changed his tune.  On April 23, 2020 – approximately nine months after publication of the Articles – Hay sent the first of a string of communications to New York Media's outside counsel, David Korzenik,[4] claiming that although Hay believed his account at the time he provided it to Defendants, he had come to understand it as transphobic and misogynist and wished to retract it.  *See*, *e.g.*, SAC Ex. B at 19-22 (section of Hay's June 8, 2020 letter titled "My Embrace of the 'Predator' Narrative").  Significantly, Hay has never alleged – not in his letters nor in the FAC or the SAC – that the Articles' core factual assertions are false.

## V.     THE COMPLAINT AND THE FIRST AMENDED COMPLAINT

On August 5, 2020 – over a year after publication of Article 1 – Hay filed a complaint in this action.  The pro se original complaint [ECF 1] brought claims against Bolonik and New York Media for breach of contract, defamation, and sexual harassment, against Korzenik for defamation, and against all defendants for "bad faith."

On October 7, 2020, Hay filed the FAC.  The FAC asserted claims for breach of contract, defamation, and gender-based discrimination against Bolonik and New York Media, and for defamation against Korzenik.  The breach of contract claim was based on an alleged oral agreement between Hay and Bolonik governing Hay's participation in the production of Article 1.  FAC ¶¶ 162-167.  The defamation claim against Bolonik and New York Media was based on allegedly defamatory statements contained in Article 1.  FAC ¶¶ 169-182  The defamation claim against Korzenik stemmed from comments allegedly made by Korzenik regarding Hay's motive for writing a letter to New York Media months after publication of the Articles announcing his wish

---

[4] Korzenik was named as a defendant in Plaintiff's initial complaint and FAC in this action.  The only claim against him (for defamation) was dismissed with prejudice, and the Court has ordered him to be terminated from the case. *See* ECF 34.

to walk back his account of his relationship with the Shumans.  *Id.*  And Hay's gender-based discrimination claim was based on the fanciful claim that Bolonik attempted to strike up a romantic relationship with Hay as she communicated with him in connection with developing the Articles. FAC ¶¶ 184-191.

## VI.   DEFENDANTS' RULE 11 LETTER

On November 20, 2020, counsel for Defendants sent the Rule 11 Letter to counsel for Hay outlining Defendants' intention to move for costs under Rule 11 of the Federal Rules of Civil Procedure if Hay did not withdraw the FAC, and attaching a copy of the draft notice of motion. Ex. 1.  Defendants explained that each of the claims Hay asserted in the FAC was without basis in fact and law, and was therefore frivolous within the meaning of Rule 11.  *Id.*

*First*, Defendants informed Hay that his defamation claims were clearly foreclosed by Hay's clear and unambiguous consent to the publication of the allegedly defamatory statements. Defendants also pointed out that Hay could not identify *any* allegedly false statements in the Articles that were "of and concerning" him.  Ex. 1 at 3.  As for Hay's defamation claim against Korzenik, the FAC asserted a claim for slander but failed to plead an essential element, special damages.  Ex. 1 at 3-4.

*Second*, Defendants informed Hay that his breach of contract claim was deficient.  Hay claimed that he had a contract with Defendants pursuant to which 1) Hay promised to "work[] exclusively with Bolonik and/or New York Media in producing the story;" and 2) Defendants allegedly promised that "Plaintiff would be treated with the utmost professionalism and respect by Bolonik and *New York* Magazine."  Ex. 1 at 2 (internal quotes omitted).  But such a contract would be facially unenforceable. To begin with, the alleged contract clearly violated the statute of frauds, as it was an oral contract containing at least two terms of indefinite duration.  *Id*.  In addition, Defendants' alleged obligations under the contract – that their investigation and reporting be

"thorough," "professional," and "sensitive to . . . gender issues," and that they act "with the utmost professionalism and respect" – were hopelessly vague.  Ex. 1 at 2-3 (internal quotes omitted).

*Finally*, Defendants alerted Hay to the fact that his claims of gender-based discrimination under the NYSHRL and NYCHRL were frivolous.  Defendants explained that Hay could not avail himself of the statutes because he did not belong to any of the categories of persons protected under either statute, and the FAC failed to alleged Hay ever even visited Defendants' workplaces in New York.  Ex. 1 at 4.  And in any case, the FAC failed to allege behavior that violated either law.  Ex. 1 at 4-5.

## VII.   HAY WITHDRAWS HIS DEFAMATION CLAIMS AND MOVES TO AMEND THE COMPLAINT

Following Hay's receipt of the Rule 11 Letter, the parties submitted a joint letter to the Court.  *See* ECF 29.  In the letter, the parties requested that the Court dismiss Hay's defamation claims against all defendants with prejudice, and terminate Korzenik as a defendant in the case. *Id.* at 1.  The parties also informed the Court that Hay intended to file the Motion to Amend, which Defendants would oppose, and requested that the Court enter a briefing schedule on the Motion to Amend, and adjourn the deadline for Defendants to respond to the FAC.  *Id.* at 1-2.  The Court granted all of the relief requested by the parties, including dismissing with prejudice Hay's defamation claims and terminating Korzenik as a defendant in the case.  ECF 30, 34.

On January 8, Hay filed the Motion to Amend, along with a copy of the proposed SAC. The proposed SAC drops the claims for defamation against all defendants, as well as Hay's claim for gender-based discrimination under the NYSHRL.  At the same time, the SAC takes a third stab at articulating a breach of contract claim, and makes further allegations purportedly in support of Hay's gender-based discrimination claim under the NYCHRL.  While the proposed amendments

add numerous outrageous allegations about Bolonik, they do not cure any of the plain legal defects in Hay's claims.

## ARGUMENT

This court should deny Hay's motion to amend because it is futile.  As Defendants pointed out in the Rule 11 letter, all of Hay's claims fail as a matter of law.  And the proposed amendments do nothing to fix them – the changes instead appear designed either to disguise Hay's defamation claim or baselessly disparage Bolonik.  For this reason, amendment is futile and should not be permitted.[5]

Because Hay has already amended his complaint, he may not file another amended pleading without court permission.  Fed. R. Civ. P. 15(a).  While "[t]he court should freely give leave when justice so requires" (Fed. R. Civ. P. 15(a)(2)), "[l]eave to amend may properly be denied if the amendment would be futile . . . . as when the proposed new pleading fails to state a claim on which relief can be granted."  *Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) (citations omitted).  Whether a proposed pleading fails to state a claim is judged by the same standards as those governing the adequacy of a filed pleading.  *Id.* (internal quotes omitted); *see also Anderson New, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("Leave to amend may be properly denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief may be granted." (citations omitted)); *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423, 432 (S.D.N.Y. 2006) ("[L]eave to amend a complaint will be denied if the amended complaint could not withstand a motion to dismiss.").

---

[5] This case is in an unusual posture; Defendants have not responded to the FAC and, indeed, Hay has agreed to withdraw the defamation claim contained therein and seems to have withdrawn his claim as asserted under the NYSHRL.  The only claims remaining in the FAC, then, are claims for breach of contract and violation of NYCHRL.  As discussed *infra* and in the Rule 11 letter, Hay did not and cannot state a claim for relief that is plausible on its face in the FAC for either of these claims.  *Iqbal*, 556 U.S. at 678.  Defendants, therefore, believe the FAC is dismissible pursuant to Rule 12(b)(6) and will make such a motion when it is procedurally appropriate to do so.

A court considering the adequacy of the pleadings on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotes omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff must allege "enough facts to state a claim to relief that is plausible on its face"). In doing so, it should "draw all reasonable inferences in Plaintiff['s] favor [and] assume all well-pleaded factual allegations to be true." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotes omitted). It need not, however, accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.*; *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (Oetken, J.) ("In order to avoid dismissal under Rule 12(b)(6) . . . a plaintiff must state the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." (citation and internal quotes omitted)). In making its determination, the court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

Here, the SAC falls far short of the standard required to avoid dismissal, as each of Hay's claims is facially defective. The SAC therefore fails to state a claim, and the Motion to Amend is futile.[6]

---

[6] Throughout the SAC, Plaintiff appears to rely on New York law. Indeed, he accuses Korzenik of attempting to run out the New York statute of limitations for Plaintiff's defamation claims (SAC ¶ 180), and his "gender-based discrimination" claim specifically relies on the New York City Human Rights Law (SAC ¶¶ 204-216). Similarly, Plaintiff's Motion to Amend relies exclusively on New York law. *See* ECF 33. Defendants therefore assume for the purposes of this motion that New York law applies to Plaintiff's claims. However, the issue is immaterial because, as demonstrated below, Plaintiff's claims would similarly require dismissal under Massachusetts law.

## I.      THE SAC FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

The SAC represents Hay's third attempt to alchemize a preliminary conversation he had with Bolonik regarding his participation as a source for the Articles into an enforceable contract. But the SAC, like the previous two complaints, fails to state a claim for breach of contract. In order to state such a claim, Hay must sufficiently allege: 1) the existence of a contract; 2) Hay's performance under the contract; 3) Defendants' breach of the contract; and 4) damages resulting from the breach. *Dee v. Rakower*, 112 A.D.3d 204, 208-209 (2d Dep't 2013); *see also Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013) (same elements required under Massachusetts law). In both the FAC and SAC, Hay's claim is premised on an alleged oral agreement between Hay on the one hand, and Bolonik and New York Media on the other, pursuant to which Hay allegedly agreed that, in exchange for his promise to "work exclusively with Bolonik and *New York* Magazine," Bolonik provided assurances "(1) that the investigation and the reporting of the story by her and the Magazine would be professional . . .  (2) that her investigation and reporting of the story would be thorough . . . (3) that the investigation and reporting of the story by her and the Magazine would be sensitive to the delicate gender issues raised by the story . . . and (4) that . . . Plaintiff would be treated with the utmost professionalism and respect."  FAC ¶ 76; SAC ¶ 75. The breach of contract claim in the SAC – just as in the FAC – fails for at least three reasons.

### A.      Hay's Breach of Contract Claim Represents an Improper Attempt to Repackage his Defamation Claim against New York Media and Bolonik

*First*, Hay's amended contract claim is a naked and impermissible attempt to replead his defamation claim. In *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988), the United Sates Supreme Court held that Jerry Falwell could not avoid the First Amendment protections articulated in *New York Times v. Sullivan*, 376 U.S. 254 (1964) by characterizing his action to recover damages for false speech as one for intentional infliction of emotional distress rather than

defamation.  *Falwell*, 485 485 U.S. at 57.  *Falwell* stands for the well-established proposition that a plaintiff, through clever pleading, may not rename claims arising from the content of a publication as a means of "end-running other requirements of defamation law."  *Foretich v. Advance Magazine Publishers, Inc.*, 765 F. Supp. 1099, 1104-06 (D.D.C. 1991).

New York courts have followed this principle, repeatedly holding that where a claim sounds in defamation,[7] a plaintiff may not avoid the requirements of pleading a defamation claim merely by calling it something else.  *See, e.g., MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*, No. 17cv7568, 2018 WL 847014, at *9 (S.D.N.Y. Jan. 12, 2018) (plaintiff's false light claim could not be premised on opinions, noting that plaintiff "cannot evade First Amendment protections for speech by dressing up its slander and defamation claims as other torts such as false light"), adopting report and recommendation, 2018 WL 4735717 (S.D.N.Y. Sept. 29, 2018); *Anyawu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693-94 (S.D.N.Y. 1995) (dismissing claims for intentional and negligent infliction of emotional distress on the grounds that they were duplicative of plaintiff's defamation claim).  This rule applies in those cases in which a plaintiff tries to disguise a defamation claim as one for breach of contract or related actions.  *See, e.g. Beter v. Murdoch*, No. 17cv1024, 2018 WL 3323162, at *2 (S.D.N.Y. June 22, 2018) (dismissing breach of contract claim as duplicative of defamation claim); *Wexler v. Allegion (UK) Ltd.*, No. 16cv2252, 2018 WL 162346, at *8 (S.D.N.Y. Mar. 30, 2018) (dismissing tortious interference claim as impermissibly duplicative of defamation claim because, "[w]hile [plaintiff] does not expressly link losing those economic opportunities to reputational harm, the only plausible reading of the Amended Complaint is that [plaintiff] lost his industry connections and future economic

---

[7] A claim sounds in defamation where it "seek[s] damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his reputation."  *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (internal quotes and alterations omitted).

opportunities because Defendants' actions injured his reputation and credibility in the industry"). Here, Hay's breach of contract claim is a transparent repackaging of the defamation claim against Bolonik and New York Magazine that was dismissed with prejudice.  To begin with, it is based on precisely the same allegations as his defamation claim: that Defendants' alleged deficient investigation and reporting of the Articles resulted in their publication of false statements about Hay and others.  *Compare*, SAC ¶¶ 198 and 199 (alleging "the article portrayed Plaintiff and others falsely by the use and sensationalization of information") and 201 ("By failing to adhere to these professional standards, the Defendants acted  . . . knowingly, recklessly or grossly negligently portraying persons and events in a false light") *with* FAC ¶¶ 172 ("The statements by Bolonik and New York Media are defamatory because, in falsely portraying Plaintiff as a foolish and gullible victim of persons falsely portrayed as extortionate fraudsters and abusers of legal process.") and 175 ("Bolonik and New York Media knowingly and maliciously made and publicized the defamatory statements in a negligent and grossly irresponsible manner, violating the standards of information gathering and dissemination ordinarily followed by responsible parties.").  And the damages plaintiff attributes to the alleged breach of contract – suspension from teaching, loss of income, and loss of career opportunities (SAC ¶ 203) – all flow directly from the purported injury to his reputation.  This case is therefore just like *Beter v. Murdoch*, in which the plaintiff alleged that in exchange for plaintiff acting as the source for an article, defendant promised not to use plaintiff's name or publish a story without her permission, and assured plaintiff that she could trust him and his editors.  2018 WL 3323162, at *2.  When defendant published a story naming plaintiff, she sued alleging, among other things, defamation and breach of contract.  The court held that the contract claim, which alleged that defendant had breached his contractual obligation not to publish plaintiff's name, sounded in defamation because it "involve[d] the same allegedly false and

defamatory statements" as the defamation claim, and plaintiff's claimed damages all flowed from injuries to her reputation.  *Id.* at *7.  As a result, the contract claim was subject to the same statute of limitations as the defamation claim and was dismissed.  *Id.*

Here, as in *Beter*, Hay is seeking to recover for damage to his reputation stemming from allegedly false statements in a publication.  By any measure, then, Hay's claim sounds in defamation and should be dismissed.  As a preliminary matter, it is fundamental that Hay "may not replead claims that were dismissed with prejudice."  *Aghaeepour v. Northern Leasing Sys., Inc.*, 378 F. Supp. 3d 254, 271 (S.D.N.Y. 2019); *Sibley v. Watches*, No. 19cv6517, 2020 WL 3259294, at *1-2 (W.D.N.Y. June 16, 2020) (dismissing amended complaint because it pled causes of action that had been dismissed with prejudice).  As shown above, Hay's amended breach of contract claim is nothing more than a blatant attempt to replead the defamation claim against Bolonik and New York Media that has been dismissed with prejudice.  Hay's request to amend the breach of contract claim is therefore barred, and the amendment futile for that reason alone.

But even if Hay had not already dismissed the defamation claim, the breach of contract claim must be dismissed because Hay did not plead that Defendants failed to act with the requisite standard of care.  A claim that sounds in defamation must be dismissed unless the plaintiff pleads that the defendant failed to meet the standard of care applicable to the defamation cause of action. *See Falwell*, 485 U.S. at 53-57.  The standard of care applicable to journalists reporting on matters of public concern is actual malice. *See Palin v. N.Y. Times Co.*, No. 17cv4853, 2020 WL 7711593, at *2 (S.D.N.Y. Dec. 29, 2020) (noting that actual malice requirement under New York law has been broadened to apply to "any communication in a place open to the public or in a public forum in connection with an issue of public interest" (quoting N.Y. Civil Rights Law § 76-1(1)(a)).[8]

---

[8] The Articles clearly concern "an issue of public interest." New York courts grant great leeway to media organizations to decide for themselves what constitute "matters of public concern." *Huggins v. Moore*, 94 N.Y.2d 296, 303 (1999)

Actual malice requires "clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S.*, 466 U.S. 485, 511, n. 30 (1984). This standard "is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term" (*Harte-Hanks Comms. v. Connaughton*, 491 U.S. 657, 666 (1989)), and does not equate to a "professional" reporting requirement. *See*, *e.g.*, *Greenberg v. CBS Inc.*, 69 A.D.2d 693, 710 (2d Dep't 1979) ("Like the concept of malice, the *Chapadeau* standard is a legal measure, designed to be applied in a wide range of circumstances and evaluated by the reasonable individual. These standards are not professional journalistic principles.").

The FAC and SAC do not even attempt to claim that Bolonik knew the Articles were false or subjectively entertained doubt as to their truth; to the contrary, the both the FAC and SAC make clear that Hay would never be able to do so. Hay pleads that Bolonik believed that the Shumans had perpetrated the paternity scam described in the Articles against Hay and other men. *See* FAC ¶¶ 110-16; SAC ¶¶ 123-30. Moreover, Hay makes clear Bolonik thoroughly confirmed the accuracy of the statements in the Articles. *See supra*, p. 4. Indeed, even now he does not dispute their truth, only their broader social meaning. *See* SAC. Ex. B at 19-22. And Hay's claims that Defendants acted unprofessionally or his spurious allegations that Bolonik made sexual advances

---

(holding that, absent clear abuse, "the courts will not second-guess editorial decisions as to what constitutes matters of genuine public concern"). Here, both the FAC and SAC plead that a prominent journalist for the *New York Times* told Plaintiff that "the story was highly newsworthy and suitable for the Times." FAC ¶ 74; SAC ¶ 73. And the subject of the Articles – a couple engaging in serial paternity traps and lodging public accusations of rape and sexual abuse in the process, with one of the targets being a prominent Harvard Law School professor who taught a course on judgment – is clearly of a piece with other subjects considered to be matters of legitimate public concern. For example, articles dealing with rape and sexual assault have been found to be matters of public concern, *Corso v. NYC Holdings, Inc.*, 35 Media L. Rep. 2286 (Sup. Ct. N.Y. Cty. Aug. 30, 2007) (article describing rape at a nightclub was a matter of public concern), as have those dealing with abuse within romantic relationships more generally. *See*, *e.g.*, *Huggins*, 94 N.Y.2d at 304-305 (article involved matters of public concern, notwithstanding that "the 'core' of the dispute . . . was a divorce," because it discussed "the important social issue of economic spousal abuse" (quotes omitted)). Similarly, the Shumans' sustained pattern of deceptive or illegal activity described in the Articles falls squarely within "matters of public concern." *See*, *e.g.*, *Rust Comm'ns Group v. 70 State St. Travel Serv.*, 122 A.D.2d 584, 585 (4th Dep't 1986) (story that individuals cheated customers of their travel agency fell within matters of public concern).

at him are irrelevant.  Hay simply has not and cannot plead actual malice.[9]  His efforts to dress up

his defamation claim as one for breach of contract are, therefore, futile. [10]

### B.      The Alleged Contract Violates the Statute of Frauds

*Second*, as Defendants pointed out in the Rule 11 Letter (Ex. 1 at 2), amendment of Hay's

breach of contract claim is futile because the contract alleged clearly violates New York's Statute

of Frauds.  The Statute of Frauds provides that any oral contract is void if it is not capable of

complete performance within one year.  N.Y. Gen. Oblig. Law § 5-701(a)(1); *Beter*, 2018 WL

3323162 at *8 n. 8 ("[W]here an oral agreement between the parties calls for performance of an

indefinite duration and can only be terminated within one year by its breach during that period, it

is void under the Statute of Frauds" (internal quotes and alterations omitted); *see also* M.G.L.A.

259 § 1 (Massachusetts Statute of Frauds prevents enforcement of oral contract not capable of

performance within one year).  An oral contract between source and publisher like the one alleged

in the SAC is therefore void if it contains terms of indefinite duration.  *See*, *e.g.*, *Almeciga v. Center*

---

[9] While Plaintiff's defamation claim is governed by New York law (*see supra*, fn. 6), he also cannot meet the negligence standard of care applicable to defamation claims under Massachusetts law.  Where, as here, the plaintiff is the source of the statements published by the defendant, Massachusetts courts hold that the defendant did not act negligently.  *See*, *e.g.*, *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 109-110 (1st Cir. 2000) (affirming dismissal of plaintiff's claim under a negligence standard, reasoning that defendants could not have been negligent where "defendants' report was reasonably based upon information the plaintiffs gave them even if later the truth of the information becomes questionable").

[10] To the extent Plaintiff argues that Bolonik waived the constitutionally-mandated standard of care applicable to defamation claims by allegedly agreeing to investigate and report the story "professional[ly]," this argument runs counter to black-letter law that waiver of constitutional privileges – including First Amendment privileges – must be established by "clear and unmistakable evidence" that the waiver was made "voluntarily, knowingly, and intelligently."  *Legal Aid Soc. v. City of N.Y.*, 114 F. Supp. 2d 204, 226-27 (S.D.N.Y. 2000) (internal quotes omitted).  "In other words, courts must indulge every reasonable presumption against waiver of fundamental constitutional rights," and any such waiver must be explicit.  *Id.* at 227 (internal quotes omitted).  Here, Bolonik indisputably did not explicitly waive the constitutional protections afforded to media speech on matters of public concern. Unsurprisingly, courts have rejected the argument made by Plaintiff here that a party may impose a higher standard of care on protected speech by alleging that it was published pursuant to a services contract.  ECF 33 at 3; *see*, *e.g.*, *Compuware Corp. v. Moody's Investor Servs.*, 499 F.3d 520, 533 (6th Cir. 2007) (rejecting plaintiff's argument that ratings agency did not issue rating competently as required under contract, because the breach of contract claim was "a backdoor attempt to assert a defamation claim without the additional burden of satisfying the demanding actual-malice standard.")

*for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 409 (S.D.N.Y. 2016) (where plaintiff allegedly acted as a source pursuant to oral contract requiring defendant publishers to conceal her identity, contract was void because plaintiff did not plead defendants' promise to conceal her identity was limited in duration); *Beter*, 2018 WL 3323162 at *8 n. 8 (same).

Here, the contract alleged in the SAC contains at least two terms of indefinite duration. First, Hay claims that the contract required Hay to "work[] exclusively with [Bolonik and New York Media] to investigate, write and report the story, and to cease contact and not work with the *New York Times* and other media outlets." SAC ¶ 183. And second, Hay claims that the contract required Bolonik and New York Magazine to "treat[] [Plaintiff] with the utmost professionalism and respect." SAC ¶ 75. Nothing in the SAC suggests a temporal limitation of these obligations. Indeed, the SAC alleges that Hay continued to perform under the contract after publication of the Articles, and expected Defendants to do the same. SAC ¶ 81 ("In reliance on [Bolonik's and New York Media's] promises and expectations . . . [f]ollowing publication of the article in the summer of 2019, [Plaintiff] helped Bolonik and New York Media promote the article and defend it from legal attacks; helped Bolonik explore movie and TV deals based on the article; and helped Bolonik work on her book based on the article."); SAC ¶ 171 (describing Korzenik's actions in response to Plaintiff's April 23, 2020 letter renouncing his previous account as "a bad-faith breach of Plaintiff's agreement with the Magazine"). Hay's breach of contract claim is, therefore, barred by the Statute of Frauds.

## C.   Vague Oral Agreements Between Reporters and Sources Are Unenforceable

*Finally*, Hay's amendment to his breach of contract claim is similarly futile for the additional reason – again pointed out in the Rule 11 Letter – that the alleged underlying promises are far too vague to be enforceable. For a contract to be valid, the agreement between the parties must be "definite and explicit so their intention may be ascertained to a reasonable degree of

certainty." *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333 (S.D.N.Y. 1982);

*accord Hurtubise v. McPherson*, 951 N.E.2d 994, 998  (Mass. App. Ct. 2011).  As a result, there

can be no enforceable contract where "the terms of the agreement are so vague and indefinite that

there is no basis or standard for deciding whether the agreement has been kept or broken, or to

fashion a remedy, and no means by which such terms may be made certain."  *Candid Prods.*, 530

F. Supp. at 1333-34; *accord Armstrong v. Rohm & Haas Co.*, 349 F. Supp. 2d 71, 78 (D. Mass.

2004); *see also John Street Leasehold LLC v. F.D.I.C.*, No. 95cv10174, 1998 WL 411328, at *5

(S.D.N.Y. July 22, 1998) (dismissing breach of contract claim because "the terms of the Oral

Agreement purportedly reached by the parties (in its various formulations) are themselves fatally

vague and indefinite," such that "there is no way to ascertain the parties' intent sufficient to enforce

the purported agreement"), *aff'd,* 196 F.3d 379 (2d Cir. 1999).  Moreover, the burden to prove the

existence of an enforceable contract is higher where, as here, an alleged oral contract is at issue.

*Freydl v. Meringolo*, No. 09cv7196, 2013 WL 1285286, at *5 (S.D.N.Y. Mar. 29, 2013).

　　　As a result, courts have found unenforceable alleged contracts between reporters or

publishers and sources, even when they involve promises far more concrete than the ones alleged

in the SAC.  For example, in *Aretakis v. Hearst Publications*, the plaintiff alleged that he provided

tapes of conversations regarding the settlement between a church and several victims of sexual

abuse, in exchange for defendant's oral promise not to publish a story based on those tapes "for a

period of time."  24 Misc.3d 1233(A), at *1-2 (Sup. Ct. N.Y. Cty. 2009).  The court refused to find

that the alleged agreement constituted a binding contract, noting the lack of clarity as to the

agreement's terms and stating that it was "reluctant to enforce vague, oral contracts where

defendant's First Amendment rights might be affected."  *Id.* at *4 (internal quotes and alterations

omitted).  Similarly, in *Steele v. Isikoff*, the plaintiff brought a breach of contract claim against the

defendant author, alleging that she agreed to work with defendant in exchange for his assurance that her statements and identity would be "off the record," and that defendant breached that promise of confidentiality by publishing articles naming her as a source.  130 F. Supp. 2d 23, 30-31 (D.D.C. 2000).  The court refused to find that the author's promises of confidentiality constituted a binding contract, stating that "journalistic ethics effectively bar reporters and sources from entering into traditional contracts relating to the provision of information or the publication of stories," and therefore "ordinary contractual considerations are inapplicable in this context." *Id.* at 31.  *See also*, *e.g.*, *Pierce v. Clarion Ledger*, 452 F. Supp. 2d 661, 664 (S.D. Miss. 2006) (no binding oral agreement between publisher and source where source provided publisher with a document on the assurance that publisher would not publish its allegations until they had been corroborated; "[t]o impose a contract theory on this arrangement puts an unwarranted legal rigidity on a special ethical relationship, precluding necessary consideration of factors underlying that ethical relationship") (internal quotes omitted), *aff'd on other grounds*, 236 Fed. Appx. 88 (5th Cir. 2007); *Sellers v. Am. Broad. Co.*, 668 F.2d 1207, 1209-10 (11th Cir. 1982) (source's agreement to provide an "exclusive story" in exchange for copyright privileges and public credit was unenforceable due to the vagueness as to what constituted the "exclusive story"); *Veilleux*, 206 F.3d at 123 (restricting speech on matters of public concern on the basis of vague oral promises raises serious constitutional questions under the First Amendment); *Kusek v. Family Circle, Inc.*, 894 F. Supp. 522, 528 (D. Mass 1995) ("[T]he Court is reluctant to enforce vague, oral contracts where Defendant's First Amendment rights might be affected").

Here, Bolonik's and New York Media's alleged obligations under the contract – that their investigation and reporting be "thorough," "professional," and "sensitive to . . . gender issues," and that they act "with the utmost professionalism and respect" – are precisely the kind of promises

made by reporters or publishers to sources that courts have refused to enforce.[11]  *G v. Fay School, Inc. by and through its Board of Trustees*, 282 F. Supp. 3d 381, 399-400 (D. Mass 2017) (holding that student handbook promises, including to respect individual differences and ensure "all community members feel supported" were too indefinite to form the basis of an enforceable contract), *aff'd*, 931 F.3d 1 (2019).  For this reason, the amendment to the breach of contract claim would be futile.

## II.   HAY FAILS TO STATE A CLAIM FOR SEXUAL HARASSMENT AND GENDER-BASED DISCRIMINATION CLAIM UNDER THE NYCHRL AND HIS AMENDMENTS ARE FUTILE

Hay's proposed amendment of his claim for violation of the NYCHRL is also futile because it fails to address the fundamental deficiencies of Hay's claim first pointed out to Hay in Defendants' Rule 11 Letter.  Indeed, rather than address them, Hay launched a false attack on Defendants, and on Bolonik in particular.  But Hay's efforts to impose a false, sexualized narrative on his relationship with Bolonik does not resolve the pleading issues and the motion to amend should be denied.

### A.   The New York City Human Rights Law Does not Apply to Conduct Whose Effect Is Felt Outside of New York City

*First*, the NYCHRL claim fails under both the FAC and SAC because no impact of the alleged conduct was or could have been felt in New York.  In *Hoffman v. Parade Publications*, the New York Court of Appeals made clear that, in order to plead a cause of action under the NYCHRL, a non-resident plaintiff must plead that he felt the impact of the alleged discriminatory conduct within the five boroughs of New York City.  15 N.Y.3d 285, 291 (2010) (noting that such a rule "confines the protections of the NYCHRL to those who are meant to be protected – those who work in the city").  The plaintiff in that case, a resident of Georgia who was employed in

---

[11] The SAC appears to allege only breach of the alleged promise that Defendants' reporting would be "professional." *See* SAC ¶¶ 182-203.

Atlanta by a company headquartered in New York, brought a cause of action under the NYCHRL alleging age discrimination in connection with his termination. *Id.* at 288. The court held that the plaintiff was not protected under the NYCHRL because he did not feel the impact of the alleged discrimination in New York City. *Id.* at 291. In so holding, the Court of Appeals explicitly rejected the proposition that a nonresident plaintiff could state a claim based upon conduct within the city or state that had an impact outside the state, and held that such a rule "is impractical, would lead to inconsistent and arbitrary results, and expands NYCHRL protections to nonresidents who have, at most, tangential contacts with the city." *Id.*

Here, according to the SAC, Hay "is a citizen of Massachusetts" (SAC ¶ 17) who "lives in Cambridge, Massachusetts[.]" SAC ¶ 40. Bolonik traveled to Boston to meet with him. SAC ¶ 105. There is *nothing* in the Complaint to suggest that Hay was ever within the five boroughs of New York City at the time he experienced the alleged conduct – as Defendants pointed out in the Rule 11 Letter. *See* Ex. 1 at 4 (noting that nothing in the FAC indicates Hay ever visited Defendants' workplaces in New York). The fact that Bolonik allegedly called and texted him from Brooklyn (SAC ¶ 103), or that New York Media has a principal place of business in New York City (SAC ¶ 18), is irrelevant. As in *Hoffman*, Hay is just such a "nonresident[] who ha[s], at most, tangential contacts with the city." As a result, he still cannot bring a claim under the NYCHRL.

### B.   The Protections of the New York City Human Rights Law Do not Extend to Sources of Articles

*Second*, even if Hay were not excluded from the protections of the NYCHRL on account of his never having worked in New York City, he would nevertheless fall outside the scope of the NYCHRL because its protections do not extend to the source of an article.

Section 8-107(1) of the NYCHRL prohibits discriminatory practices relating to "employment," with Section 8-107(23) extending those protections to "interns, freelancers and independent contractors." NYCHRL § 8-107(23). Contrary to Hay's suggestion, interns, freelancers and independent contractors are not examples of a larger category of "non-employees and people not paid money" covered by the NYCHRL. ECF 33, 4-5. They are, rather, the only individuals other than employees to whom the statute's protections apply.

In fact, the limited case law interpreting Section 8-107(23) has already rejected the argument that the protections of the NYCHRL extend to unpaid non-employees who fall outside these categories. In *Hughes v. Twenty-First Century Fox, Inc.*, for example, the plaintiff – an unpaid guest contributor to a television program – relied on Section 8-107(23) to argue that she was entitled to the protections of the NYCHRL. 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018). The court rejected the argument, noting that the plaintiff had not alleged she belonged to one of the categories listed in Section 8-107(23), and stating that "[plaintiff's] role as a guest television contributor falls outside the ambits of these amendments." *Id.*

Here, like the plaintiff in *Hughes*, Hay does not even attempt to argue that he belongs to any of the categories enumerated in Section 8-107(23). *See* ECF 33 at 5 (describing Plaintiff's role as "researcher, factchecker, and legal consultant"). This is because he clearly does not. Hay is not an independent contractor, because he did not perform services according to a contract. *See* Sections I.B and I.C, *supra*. He is not a freelancer because he was not pursuing a profession in journalism when he acted as a source for the articles. *See* "freelancer," *Merriam-Webster.com.* 2021 https://www.merriam-webster.com/dictionary/freelancer ("[A] person who pursues a profession without a long-term commitment to any one employer."). And he is not an intern, because that category is intended to protect college students taking internships "as a stepping stone

to the job market." *Hughes*, 304 F. Supp. 3d at 445.  In short, Hay, a source for an article, stands in exactly the same shoes as the guest television contributor in *Hughes* – both pairs of shoes outside the protections of NYCHRL § 8-107.

Because Hay does not belong to the categories protected by the NYCHRL, he falls outside the scope of the statute's protections.  His motion to amend the NYCHRL claim is therefore futile for this reason as well.

## CONCLUSION

The SAC, like the FAC, fails to state a claim for either breach of contract or sexual harassment and gender-based discrimination.  The Motion to Amend is therefore futile, and should be denied.

Dated: January 22, 2021

Respectfully submitted,

By: Katherine M. Bolger
Katherine M. Bolger
Jeremy A. Chase
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 489-8230
Fax:    (212) 489-8340
Email: katebolger@dwt.com
        jeremychase@dwt.com

*Attorneys for Defendants*