UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE HAY<br><br>                 Plaintiff,<br><br>   v.<br><br>NEW YORK MEDIA LLC, and<br>KERA BOLONIK,<br><br>                Defendants. | Civil Action No. 20-CV-6135 |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO AMEND**

# **TABLE OF CONTENTS**

**I.      The Breach of Contract Claim Is Not a Defamation Claim Unless It Seeks the Same Damages as a Defamation Claim, and Is Not Subject to a Heightened Burden of Proof................ 1**

**II.     The Statute of Frauds Is Inapplicable. ................................................................................... 6**

**III.    The Promise to Perform Within Professional Journalistic Standards Is Not Vague. ............. 6**

**IV.    The Claim For Sexual Harassment Under NYCHRL Is Viable............................................... 7**

**V.     Plaintiff's Work With Defendants Falls Within the Ambit of NYCHRL ............................... 9**

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO AMEND**

I. **The Breach of Contract Claim Is Not a Defamation Claim Unless It Seeks the Same Damages as a Defamation Claim, and Is Not Subject to a Heightened Burden of Proof.**

Defendants argue that the breach of contract count is a defamation claim in disguise, and as such, subject to a heightened burden of proof. While courts have recognized circumstances in which this is so, those circumstances are not present here. Those circumstances require that a plaintiff seek reputational damages, regardless of the name of the cause of action. In such cases, the truth or falsity of a communication regarding reputation is material to the cause of action, and therefore First Amendment protections attach. In the present case, such circumstances are not present. Professor Hay explicitly seeks only economic damages flowing from the breach, as set forth in the *ad damnum* clause of Count One of Plaintiff's Proposed Second Amended Complaint:

> Defendants' breach caused Plaintiff to suffer reasonably foreseeable economic damages flowing from the breach, including but not limited to suspension from teaching, loss of income, and loss of career opportunities, exceeding $75,000.

Proposed Second Amended Complaint ("SAC") [ECF 32-1] ¶ 203. The truth or falsity of any communication is not an element of this count, any stray references in the SAC to concerns in that arena notwithstanding. Rather, this claim rests squarely on whether the Defendants followed the process required by the well-known professional standards of journalism, ¶¶ SAC 184-196 (setting forth standards), not on whether the article's statements were substantively true.

In *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), the Supreme Court addressed a similar situation, and reached the same result as proposed by Plaintiff here. Reporters to whom he gave information agreed to keep Cohen's identity anonymous, but did not, and Cohen was fired from his job. *Id.* at 665. He sued for, *inter alia*, breach of contract. *Id.* at 666. Defendants argued that Cohen was attempting to use the breach of contract claim to avoid the strict requirements for establishing a libel or defamation claim. *Id.* at 671. The Court disagreed, citing the damages sought by Cohen:

> Cohen is not seeking damages for injury to his reputation or his state of mind. He sought damages in excess of $50,000 for breach of a promise that caused him to lose his job and

> lowered his earning capacity. Thus, this is not a case like *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), where we held that the constitutional libel standards apply to a claim alleging that the publication of a parody was a state-law tort of intentional infliction of emotional distress.

*Id.* at 671. The Court held that the First Amendment did not prohibit the confidential source from recovering damages under promissory estoppel law for the newspaper publishers' breach of promise of confidentiality in exchange for the information he provided. It held that the contract doctrine of promissory estoppel was a law of general applicability, and any inhibition of truthful reporting was no more than an incidental consequence of applying generally applicable law. *Id.* at 669. The Court distinguished *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) by noting that Cohen did not seek damages for injury to his reputation or his state of mind. Rather, he sought damages in excess of $50,000 for breach of a promise that caused him to lose his job and lowered his earning capacity. This did not violate the First Amendment. This is no different from the damages sought by Professor Hay. Therefore, Defendants' argument that this contract claim is governed by the "actual malice" standard required in defamation cases is incorrect.

The cases cited by Defendants are all of the *Hustler* variety, and not the *Cohen* variety. They do not involve breach of contract and economic damages, but rather torts seeking emotional damages that are very similar to reputational injuries sought in defamation. Therefore, they are inapposite. *Foretich v. Advance Magazine Publishers*, 765 F.Supp. 1099 (1991) involves claims for emotional distress based on the same published words, explicitly based on the *Hustler* holding. Id. at 1104. *MiMedx Group, Inc. v. Sparrow Fund Mgmt. LP*, 2018 WL 847014, at *9 (S.D.N.Y. Jan. 12, 2018), *Anyawu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693-94 (S.D.N.Y. 1995) and *Beter v. Murdoch*, No. 17cv1024, 2018 WL 3323162, at *7 (S.D.N.Y. June 22, 2018) all involved emotional distress damages for torts under the *Hustler* doctrine. *Wexler v. Allegion (UK) Ltd.*, 2018 WL 1626346, at *8 (S.D.N.Y. Mar. 30, 2018) also involved multiple tort causes of action, and the plaintiff conceded that these essentially "amounted to the independent tort of defamation in addition to interfering with [his] prospective economic

opportunities. *Id*. As Defendants themselves note, **"**[a] claim sounds in defamation where it "seek[s] damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his reputation," citing *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (internal quotes and alterations omitted). Defendant's Brief at 11 n. 7. The purely economic damages sought by Professor Hay do not fall within this standard.

Defendants' brief reference to claim preclusion on the grounds that Professor Hay has withdrawn any defamation claims, Defendant's Brief at 12, is no consequence. Claim preclusion does not apply here because Count One for breach of contract is not a defamation claim.[1]

Defendants also make the novel claim that Professor Hay must demonstrate actual malice under New York Civil Rights Law § 76-a. That recently enacted statute applies to "any communication in a place open to the public or in a public forum in connection with an issue of public interest." *Id.* citing *Palin v. N.Y. Times Co.*, No. 17cv4853, 2020 WL 7711593, at *2 (S.D.N.Y. Dec. 29, 2020). However, unlike *Palin*, where the plaintiff was clearly a public figure whose doings are matters of public interest, the present case involves quite different matters. The allegations of the SAC do not require the conclusion that this is an issue of public interest under § 76(a)(1)(a) or that Professor Hay was a public figure prior to publication, which he certainly was not, as a simple date-limited Google search shows. The matter at hand also does not meet the requirement of § 76-a that "the truth or falsity of such communication is material to the cause of action at issue." Therefore, § 76-a is inapplicable.

Even were it applicable, a federal court sitting in diversity jurisdiction may not apply § 76-a because it is a procedural provision. Its shift to a "clear and convincing" burden of proof is a state procedural rule, which is not applied by the federal courts sitting in diversity. *Farella v. City of New*

---

[1] Defendant's citation to *Compuware Corp. v. Moody's Inv'rs Servs., Inc.*, 499 F.3d 520, 534 (6th Cir. 2007) is inapposite. As the *Compuware* Court explicitly stated, "We emphasize that this case does not involve (and thus our holding does not affect) a party's right to agree to, or to sue for the breach of, an express contractual provision." Here, Plaintiff alleges an express contractual provision that was breached.

3

*York*, 323 F. App'x 13, 15 (2d Cir. 2009) (denying application of state burden of proof rules because "federal courts generally apply their own evidentiary rules in both federal question and diversity matters"). Its application would effectively overrule Fed. R Civ. P. 8, and would certainly affect the *Iqbal-Twombly* plausibility standard. See *La Liberte v. Reid*, 966 F.3d 79, 86, 88 (2d Cir. 2020) (stating that the Court has not yet decided the applicability of such provisions).

The state burden of proof rule in § 76-a is much broader than First Amendment protections, which would extinguish the rules of general applicability for which the *Cohen* court extended both protection and constitutional solicitude. *Cohen*, 501 U.S. at 669. By contrast, under the narrower First Amendment, when a plaintiff claims defamation in regard to "a matter of public concern," actual malice must be proven by clear and convincing evidence. A "matter of public concern" under the First Amendment means "a matter of general public importance." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000) (citing *Dun & Bradstreet v Greenmoss Builders,* 472 U.S. 749, 756–61, 774 (1985) (White, *J.,* concurring). This is determined by "the content, form, and context of a given statement, as revealed by the whole record." Flamm, 201 F.3d at 150, citing *Connick v. Myers,* 461 U.S. 138, 147–48, (1983) and *Dun & Bradstreet v Greenmoss Builders,* 472 U.S. 749, 756–61, 774 (1985).

By contrast, under the muscular coverage of § 76-a, the penumbras extend well beyond "matters of general public importance" to encompass any public communication. *Id.* § 76-a(1)(d). This expansive reading completely swamps any rules of general applicability, which should not be lightly invoked, because it risks deprivation of due process of the laws in violation of the United States Constitution and the New York State Constitution, by redistributing the risk of error in a manner not justified by sufficiently weighty interests. *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 283 (1990). In § 76-a, we find the broadest possible protection of communication, which is in many ways commendable. There can, however, be too much of a good thing. This extends into areas in which laws of general applicability normally provide protection to injured plaintiffs in the form of civil liability, which could raise concerns under the Due Process Clause of the federal and state constitutions were it

4

not tempered by the restriction of its application to "where the truth or falsity of such communication is material to the cause of action at issue." That restriction may save the statute from falling into undue deprivation of due process, but to do so, it must be carefully, and not loosely, applied.

The retroactive application of this recently enacted statute also raises concerns. In *Palin*, 2020 WL 7711593, at *4, the court held that §76-a could be applied retroactively because "§ 76-a will not have any meaningful impact on plaintiff's 'substantive rights,' because plaintiff is a public figure," who would have had to show actual malice in any event. Here, by contrast, there is nothing in the SAC to suggest that Plaintiff is a public figure who would have to show actual malice, nor is it a "matter of general public importance" requiring such a showing. There would be a harsh impact on Plaintiff because the statute imposes a higher burden of proof that implicates due process rights, and which Plaintiff would not otherwise have to meet under First Amendment considerations.  *Palin*, 2020 WL 7711593, at *4-5. Plaintiff has a reliance interest, as contract law has not been governed by an actual malice standard, whereas the application of this statute this would make it so. Nor is this, as suggested in *Palin*,  a correction of a statutory drafting error or a judicial interpretation. This is an entirely new law engrafted on a thirty year old law. Its legislative purpose when originally enacted was to assist people involved in the public permitting process who found themselves the subject of largely frivolous lawsuits because they spoke out against powerful interests in the public permitting process. SLAPP Suits—Costs And Fees, Compensatory And Punitive Damages To Defendants, 1992 Sess. Law News of N.Y. Ch. 767 (A. 4299) (McKINNEY'S) (referencing public government processes.) In § 6, it specifically stated that it would not have retroactive effect on any action commenced prior to the effective date of the act. *Id*. Thus, the retroactive application of § 76-a would not comport with the meaning or intent of the statute, and would affect reliance interests that should be afforded judicial solicitude. For these reasons, the requirement of showing "actual malice" is not appropriate to this action.

## II. The Statute of Frauds Is Inapplicable.

Defendants argue the contract between the parties was not performable within a year. It was, however, capable of being performed within a year because it had an end date that could occur within the year, i.e. publication of the article. "General Obligations Law § 5–701(a)(1) has consistently been interpreted to encompass only those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year." *Zuccarini v. Ziff-Davis Media, Inc.*, 306 A.D.2d 404, 405 (N.Y. App. Div. 2003) (citing *D & N Boening v. Kirsch Beverages,* 63 N.Y.2d 449, 454 (N.Y. 1984). In *Zuccarini*, the court held that an alleged oral agreement to confer upon the plaintiff an equity interest in a publication did not violate the statute of fraud because its performance within one year was possible. *Id.* By contrast, the cases cited by Defendant apply to the very different situation where there is no end date in mind, such as *Almeciga v. Ctr. for Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 410 (S.D.N.Y. 2016) (indefinite promise to keep confidentiality) and *Beter v. Murdoch*, No. 17 CIV. 10247 (GBD), 2018 WL 3323162, at *7 (S.D.N.Y. June 22, 2018), *aff'd,* 771 F. App'x 62 (2d Cir. 2019) (indefinite promise of "protection"). Defendants point to certain statements in the narrative section of the SAC referring to the writing of the story and being treated with "professionalism." SAC ¶¶ 75, 81, 171, 183. These are not elements of the claim for breach of contract, however, which are set forth in detail in Count One. Whatever Professor Hay's expectations may have been, the contract ended with the publication of the article, which was performable within a year.

## III. The Contract Promise to Perform Within Professional Journalistic Standards Is Not Vague.

Defendants cite cases holding that certain promises are too vague to be enforceable. These cases are not applicable to the case at bar. *Aretakis v. Hearst Publc'ns*, 901 N.Y.S.2d 897 (N.Y. Sup. 2009) (Unreported Disposition) is an unreported disposition of the New York Supreme Court, New York County, regarding a promise of embargo of certain information about which no one in the case seemed to be particularly clear, and it is not binding precedent. *Candid Prods., Inc. v. Int'l Skating Union*, 530

6

F. Supp. 1330, 1333 (S.D.N.Y. 1982) involved a vague agreement to refrain from negotiating a contract with a third party "without first negotiating in good faith" with plaintiff. The others are non-binding non-Circuit precedents from quite different contexts. Their facts are all distinguishable from the present case. In *Steele v. Isikoff*, 130 F. Supp. 2d 23, 30-31 (D.D.C. 2000), the Court said that a promise that the conversation would be off the record with no durational term was unenforceable. It also cited a Minnesota Supreme Court decision, reversed on other grounds by the Supreme Court, for the proposition that breach of contract was an "ill fit" under Minnesota law for a breach of a promise of confidentiality. *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 123 (1st Cir. 2000) involved a promise to present the trucking industry in a "positive" light.

By contrast, the allegations of Count One of the SAC refer not to vague promises of confidentiality or presentation in a positive light, but rather state an express agreement to do "professional" investigation and reporting, and to adhere to "customary ethical standards." SAC ¶¶ 182-183 (express agreements), SAC ¶¶ 184-196 (setting forth journalistic standards) and SAC ¶¶ 197-200 (Defendants' failure to follow the journalistic process of the professional standards).  Just as in the professional contracts found to be sufficiently definitie in *Miliau, Bandier*, *Brushton-Moira* and *Mercer,* (Plaintiff's Initial Brief at 4), there are standards known to the journalistic profession. "Professional journalistic principles are well known and courts have frequently applied these principles…" *Greenberg v. CBS Inc.*, 69 A.D.2d 693, 710 (N.Y. App. Div. 1979). There are professional standards in journalism related to investigation, reporting and ethics, and they have been pleaded explicitly in Count One, making a plausible case that there are standards sufficient for a court to determine whether or not the contract in the case at bar has been fulfilled.

    **IV.**    **The Claim For Sexual Harassment Under NYCHRL Is Viable.**

The Defendants raise *Hoffman v. Parade Publications,* 15 N.Y.3d 285, 291 (2010), for the proposition that the Court is deprived of subject matter jurisdiction. The Plaintiff has no evidentiary burden. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Defendants attached their

7

extensive Rule 11 letter as Exhibit A to the Declaration of Kate Bolger. While it contains no admissible factual evidence regarding subject-matter jurisdiction, it is telling that the letter did not mention *Hoffman*, as *Hoffman* is distinguishable. As a good faith extension of law, *Hoffman* should not be applicable to the sexual harassment alleged here. *Hoffman* involved termination of an employee who resided and worked in Georgia, who alleged that the employer made the decision to terminate in New York City. The Court held that the single decision to terminate was an insufficient nexus for an employee who lived and worked outside of New York City, and stated that in such a situation only a resident of New York City receives the protection of the law. In the present case, however, the alleged sexual harassment was continuously emanating from New York over a long period of time. SAC ¶¶ 103-112 ("Throughout their association, Bolonik frequently contacted Plaintiff by telephone and text message from her home in Brooklyn, New York often outside of business hours…In the calls, she often made statements that were intended as romantic and sexual overtures…"). This is unlike the single decision made in *Hoffman,* which the Court found too attenuated to create any impact. See *Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (distinguishing single act of termination from course of conduct). Where, however, a course of sexual harassment is planned, carried out and consummated in and from New York, it cannot realistically be said that New York City can never have any interest in such a matter under any circumstances sufficient to confer subject-matter jurisdiction. *See Chau v. Donovan*, 357 F. Supp. 3d 276, 283 (S.D.N.Y. 2019) (California resident sexually harassed by potential New York City employer had subject-matter jurisdiction under the NYCHRL).

The NYCHRL has no explicit limitation on its subject-matter jurisdiction. It differs from the NYSHRL, which has an explicit provision limiting its extraterritorial application to acts "against a resident of this state…" N.Y. Exec. L. § 298–a(1). No such limitation is found in the NYCHRL, suggesting that it has or is intended to have a greater extraterritorial effect than the NYSHRL. Other courts have understood that working in New York City is not a necessary prerequisite, although there must be some connection. *Regan v. Benchmark Co. LLC*, No. 11 CIV. 4511 CM, 2012 WL 692056, at

8

*14 (S.D.N.Y. Mar. 1, 2012) (Employee not located in New York after move to New Jersey could invoke protections of NYCHRL). *See also Hnot v. Willis Grp. Holdings Ltd.*, No. 01 CIV. 6558 (GEL), 2006 WL 2079326, at *2 (S.D.N.Y. July 24, 2006) (pre-*Hoffman* case explaining that other connections could suffice); *Torrico v. Int'l Bus. Machines Corp.*, 319 F. Supp. 2d 390, 398–99 (S.D.N.Y. 2004) (same).

*Hoffman* held that, in the context of a single termination decision, an employee outside of New York City was not protected by the NYCHRL. Under the very different circumstances of the present case, Plaintiff urges that the Court extend the protections of the law to the allegations of the SAC and find, at least for purposes of this motion to dismiss, that they are sufficient to confer subject-matter jurisdiction.

**V.     Plaintiff's Work With Defendants Falls Within the Ambit of NYCHRL**

The New York City Human Rights Law § 8-107(23) states that "employees" includes non-employees and people not paid money, including interns, freelancers and independent contractors. Ms. Bolonik and the Magazine used Professor Hay's services as a researcher, factchecker, and legal consultant in investigating and writing the story. SAC ¶¶ 6, 116, 142. Defendant argues that Professor Hay does not fit within the definitions of freelancer or independent contractor, but cannot offer any legal definitions or case law interpretations of these terms because this is a case of first impression. A "contractor" can be simply a "party to a contract." Contractor, Black's Law Dictionary (11th ed. 2019). A "freelancer" can be any "person who acts independently without being affiliated with or authorized by an organization." Freelancer, Merriam Webster Dictionary (Merriam-Webster.com). These definitions cover Professor Hay because he was a party to a contract with Defendants, and he worked with them independently without being affiliated with the organization.

Defendant cites *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018), where an unpaid guest contributor to a television program was found not to be entitled to the protections of the NYCHRL. That case was before the recent amendments to NYCHRL that added the additional terms referenced above, and the only category available for Hughes was that of "intern," which the court said did

9

not fit her role. *Hughes* has no bearing on the present case. Unlike *Hughes*, Plaintiff spent a great deal of time working with and for the Defendants over a long period of time, in exchange for consideration, regardless of whether he was paid in money or not. If the law is to be construed liberally, and it is to be so construed, New York City Administrative Code § 8-130, then it covers the present situation. Taking this liberal construction into account in this case of first impression, Plaintiff should be understood as a person as protected from sexual harassment under the New York City Human Rights Law.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that he be granted leave to file his Second Amended Complaint.

February 5, 2021

Respectfully submitted,

/s/ Jillian T. Weiss
Jillian T. Weiss
LAW OFFICE OF JILLIAN T. WEISS, PC
442 15th Street №1R
Brooklyn, New York 11215
Telephone: (845) 709-3237
Facsimile: (845) 684-0160
jweiss@jtweisslaw.com

Attorney for Plaintiff