# EXHIBIT A

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| PRESENT: | HON. RICHARD G. LATIN | PART | IAS MOTION 46 |
|---|---|---|---|
| | Justice | | |

-----------------------------------------X

MISCHA SHUMAN, MARIA-PIA SHUMAN,

                   Plaintiff,

- v -

NEW YORK MAGAZINE, NEW YORK MEDIA, VOX MEDIA, KERA BOLONIK,

                   Defendant.

-----------------------------------------X

| INDEX NO. | 155577/2020 |
|---|---|
| MOTION DATE | 06/07/2021 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 25, 26, 27, 28, 29, 30, 31, 32, 39, 51, 54
were read on this motion to/for                                   DISMISS                                   .

      Upon the foregoing documents, it is ordered that defendants New York Magazine, New York Media, LLC, Vox Media, LLC, and Kera Bolonik's motion to dismiss pursuant to CPLR 3211(a)(1) and (a)(7) is determined as follows:

      Plaintiffs commenced the instant action alleging they were libeled in two separate articles published by defendants entitled *The Most Gullible Man in Cambridge A Harvard Law Professor Who Teaches a Class on Judgment Wouldn't Seem Like an Obvious Mark, Would He?* and *The Harvard Professor Scam Gets Even Weirder Six Other Men Describe Their Encounters with the Same Mysterious Frenchwoman*. At its most simplistic, the first article pertained to the complicated relationship between the plaintiffs and Harvard professor Bruce Hay ("professor Hay"), but also concerns allegations of rape, paternity extortion, and abuse of process relating to the Title IX process and other judicial proceedings. The second article was a follow up that tells the accounts of six men who reached out to the article's author to recount their allegedly similar encounters with the plaintiffs. Both articles were written by defendant Bolonik. While plaintiffs generally characterize the two articles as completely false and the result of poor investigative reporting, they specifically argue that plaintiffs were defamed through a paternity extortion scheme libel, a "house-

napping" libel, a weaponized Title IX sexual harassment investigation at Harvard libel, and by describing their actions as belonging to a "punitive game."

With this motion, defendants now seek to dismiss plaintiffs' complaint pursuant to CPLR 3211(a)(1) and (a)(7) arguing that the defendants did not act with gross irresponsibility, the Title IX Report concludes after a thorough investigation that the allegedly false claims are substantially true, and that the "Poe" statements (essentially that a Harvard medical school student, "Poe," was extorted out of $11,000 as a result of plaintiffs' paternity scheme) are absolutely privileged pursuant to New York Civil Rights Law § 74. In opposition, plaintiffs argue that neither New York substantive law nor a gross irresponsibility standard apply, that the articles published were not matters of public concern as they pertained to mere gossip and prurient interest, and that the numerous exhibits they attached to their pleadings should not be analyzed as part of the pleadings for CPLR 3211 purposes.

As for the choice of substantive law, plaintiffs argue that the determination is not important since, in any event, the allegations in the complaint satisfy the criteria of all jurisdictions. Nevertheless, plaintiffs argue that they were residents of Massachusetts at the time of the controversy and under Massachusetts law, plaintiff must only allege publisher negligence, not gross irresponsibility. Similarly, plaintiffs also argue that they are citizens of France and under French law the defendants would bear the burden of rebutting the presumption of their bad faith or negligence. However, inasmuch as New York is a principal place of business for all the publishing defendants, defendant Bolonik resides in New York, the plaintiffs decided to commence this action in New York, and because New York offers greater protection to the media than other jurisdictions, New York has the superior interest in this case and its substantive law shall apply (*see Kinsey v New York Times Company*, 2020 WL 1435141 [SD NY, March 23, 2020, 18-CV-12345 (VSB)]).

On a motion to dismiss pursuant to CPLR 3211(a)(7), the facts alleged in the complaint must be accepted as true, the plaintiffs are accorded the benefit of every possible favorable inference, and the Court's function is to determine only whether the facts alleged fit within any

cognizable legal theory (*see Leon v Martinez,* 84 NY2d 83, 87-88 [1994]; *Siegmund Strauss, Inc. v East 149th Realty Corp.*, 104 AD3d 401 [1st Dept 2013]). In making this assessment on the sufficiency of the plaintiffs' claims, the Court may consider both the facts alleged in the complaint as well as the documents attached to it as exhibits, which may be incorporated by reference (*see Deer Consumer Products, Inc. v Little*, 32 Misc3d 1243[A][Sup Ct, New York County 2011]; *Lore v New York Racing Assn. Inc.*, 12 Misc3d 1159[A][Sup Ct, Nassau County 2006]; *see generally Armstrong v Simon & Schuster*, 85 NY2d 373 [1995]).

Generally, defamation arises from "the making of a false statement which tends to 'expose the plaintiff[s] to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of [plaintiffs] in the minds of right-thinking persons, and to deprive [plaintiffs] of their friendly intercourse in society'" (*Dillon v City of New York,* 261 AD2d 34, 37-38 [1st Dept 1999], quoting *Foster v Churchill*, 87 NY2d 744, 751[1996][citations omitted]; *O'Neill v New York Univ.*, 97 AD3d 199 [1st Dept 2012]). Where the defamation takes the form of libel and is brought by a nonpublic figure against a news publisher, the Court must determine whether "'the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition'" (*Gaeta v New York News, Inc.*, 62 NY2d 340 [1984], quoting *Chapadeau v Utica Observer-Dispatch*, 38 NY2d 196 [1975]). If the content of the article warrants public exposition, the defamed party may only recover damages upon a showing of the gross irresponsibility of the publishing defendants (*id.*).

There is no mechanical test to identify which subjects involve matters of genuine public concern (*id.*). When an article's subject is merely gossip or only concerns prurient interests, it is not a matter of public concern (*see generally Weiner v Doubleday & Co.*, 74 NY2d 586 [1989]; *Lewis v Newsday, Inc.*, 246 AD2d 434 [1st Dept 1998]). However, because there is a fine line between what is solely gossip and prurient and what may be a matter of public interest, courts generally defer to the judgment of editorial boards, absent clear abuse (*see Weiner*, 74 NY2d at 595; *Gaeta*, 62 NY2d at 349). Nonetheless, just because something is published by a news source does not

automatically mean that the subject matter warrants public exposition (*see Huggins v Moore*, 94 NY2d 296 [1999]).

Courts have found that there is no abuse of editorial discretion where the article can be "'fairly considered as relating to any matter of political, social, or other concern of the community'" (*id.*, quoting *Connick v Myers*, 461 US 138 [1983]). Moreover, matters may be considered to be of the public concern so long as some theme of legitimate public concern can be derived from a "'human interest' portrayal of events in the lives of persons who are not themselves public figures" (*see Huggins*, 94 NY2d 296; *Gaeta,* 62 NY2d at 340).

Here, the core of the articles reasonably relates to deceptive and/or criminal activity in the community, which is of greater public significance than plaintiffs' private sexual encounters (*see Hayt v Newsday, LLC*, 176 AD3d 787 [2d Dept 2019]; *Robart v Post-Standard*, 52 NY2d 843 [1981]). Likewise, the intent imputed on plaintiffs, prevalent in both articles, involves underlying themes of evolving gender power dynamics in sexual relationships, which is an important modern social issue. Similarly, accounts of sexual harassment, rape, and/or the potential abuse of the Title IX process at well-known academic institutions are matters of social concern to the public (*see Doe v Daily News, L.P.*, 167 Misc2d 1 [Sup Ct, New York County 1995]). Furthermore, Justice Billings already ruled in her order dated December 10, 2020, when she decided not to seal documents in this case, that this matter was one of substantial public interest (*see generally Baldasano v Bank of New York*, 199 AD2d 184 [1993])*.* Therefore, there is no clear abuse of discretion, and this Court will not second guess the judgment of the media as to what constitutes a matter of public concern (*see Ortiz v Valdescastilla*, 102 AD2d 513 [1st Dept 1984]; *Gaeta*, 62 NY2d at 349).

The next relevant inquiry is whether the defendants acted with gross irresponsibility. Dismissal of a complaint is appropriate where defendants did not act with gross irresponsibility (*see Crucey v Jackall*, 275 AD2d 258 [1st Dept 2020][author not grossly irresponsible where statements' genesis found in official investigative report]). A publisher acts in a grossly irresponsible manner when it fails to exercise due consideration for the standards of information

gathering and dissemination ordinarily followed by responsible parties (*see Chapadeau*, 38 NY2d 196 at 199). "Absent specific proof that such reliance was substantially improper, the mere fact that the published information might later be proven false is insufficient to justify a trial" (*Ortiz*, 102 AD2d 513; *Robart*, 52 NY2d 843). Furthermore, an emotionally distraught or embittered person is not a presumptively unreliable source, as a victim to an incident is still more reliable than a trustworthy source whose information is based on hearsay (*id.*).

Here, the pleadings and the exhibits to the pleadings make clear that professor Hay was the principal source of information to Bolonik for the potentially libelous statements. He answered her questions, provided her with his account, and provided evidence in many forms including, among other things, text messages, court documents from various litigations, and Title IX documents. Given his personal experiences with plaintiffs, his position as a professor of judgment, and the corroborating evidence provided, defendants had no reason to doubt the veracity of the information provided (*see Gaeta v New York News, Inc.*, 62 NY2d 340; *Ortiz*, 102 AD2d 513). Moreover, though professor Hay's perspective may have subsequently evolved after publication, the pleading exhibits demonstrate that he believed that he was telling Bolonik the truth at the time the article was written (*see Farrakhan v N.Y.P. Holdings*, 168 Misc2d 536 [Sup Ct, New York County 1995]).

In addition to professor Hay, the pleading exhibits also demonstrate that the defendants consulted with at least seven other individuals, many with first-hand knowledge. Furthermore, the pleading exhibits show that Bolonik sought to interview plaintiffs and had an off-record phone call with plaintiff Mischa Schuman, and defendants' fact checker reached out to plaintiffs to provide their perspective prior to publication of the first article. To that end, plaintiffs' denials were included in the first article. Defendants decision to credit the sources they did and omit or downplay the information provided by plaintiffs or other sources is a "matter of editorial judgment in which the courts, and juries, have no proper function" (*Rinaldi v Holt, Rinehart & Winston*, 42 NY2d 369 [1977]; *Alcor Life Extension Foundation v Johnson*, 43 Misc3d 1225[A][Sup Ct, New York County 2014]). Thus, defendants were not grossly irresponsible in their reporting.

Inasmuch as defendants have demonstrated that the subject of the articles was of public concern and that they did not act with gross irresponsibility, plaintiffs' complaint cannot survive as a matter of law. Thus, the Court's inquiry needs not go any further. However, it is also worth noting that the Title IX report, that was based on over 2,000 attorney hours and over six months of investigation in preparing and conduction interviews of the plaintiffs, professor Hay, and others, and reviewing documents provided by the aforementioned (including emails and text messages), as well as documents from court filings and other public records, serves to demonstrate that what plaintiffs claim as libel was, by a preponderance of the evidence, more substantially accurate than false. Also, the court transcript concerning "Poe", another alleged victim, demonstrates that plaintiff Maria-Pia Shuman did state that she told "Poe" through an intermediary that he was the father of her child, and that "Poe" did state that she called him and said that he did not need to take a paternity test, but he had to give his time and/or money, for which he paid over $11,000.

Accordingly, defendants' motion pursuant to CPLR 3211 is granted and plaintiffs' complaint is dismissed.

This constitutes the decision and order of this Court.

| 6/15/2021 | | | | |
|---|---|---|---|---|
| DATE | | | RICHARD G. LATIN, J.S.C. | |
| CHECK ONE: | X CASE DISPOSED | | ☐ NON-FINAL DISPOSITION | |
| | X GRANTED | ☐ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

155577/2020 SHUMAN, MISCHA vs. NEW YORK MAGAZINE
Motion No. 002
Page 6 of 6

6 of 6