**MANDATE**

N.Y.S.D. Case #
20-cv-6135(JPO)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of March, two thousand twenty-two.

PRESENT:
    JOHN M. WALKER, JR.,
    PIERRE N. LEVAL,
    MICHAEL H. PARK,
        *Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Mar 31 2022

---

BRUCE HAY,

        *Plaintiff-Appellant*,

    v.                                            21-1727

NEW YORK MEDIA LLC, KERA BOLONIK,

        *Defendants-Appellees.*[*]

---

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | JILLIAN T. WEISS, Law Office of Jillian T. Weiss, P.C., Brooklyn, NY. |
| FOR DEFENDANTS-APPELLEES: | KATHERINE BOLGER (Jeremy Chase, *on the brief*), Davis Wright Tremaine LLP, New York, NY. |

---

[*] The Clerk is respectfully directed to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the Southern District of New York (Oetken, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Bruce Hay, a civil procedure professor at Harvard Law School, appeals the denial of his request for leave to file a second amended complaint ("SAC") in his lawsuit against Kera Bolonik and her former employer, New York Media LLC ("New York Media").[1] The allegations in the SAC center on a July 2019 article—published in print in *New York* Magazine and online in *The Cut*—in which Bolonik wrote of Hay's tumultuous relationship with married couple Maria-Pia Shuman and Mischa Shuman ("the Shumans"). The article described the relationship between a "spellbound" Hay and the Shumans, who cycled between flattery and romantic affection toward Hay, at certain times, and harassment of him and his family, at others. The article recounts that the Shumans, for example, deceived Hay into believing that he fathered Maria-Pia's child, filed retaliatory rape and sexual harassment allegations against Hay in a Title IX complaint at Harvard, and manufactured a fraudulent lease in order to take possession of the Hay family's home. According to the article, Hay "entertain[ed] doubts" about the Shumans and on several occasions contacted law enforcement, but he "still sought ways to justify, or at least make sense of, [the Shumans'] campaign against him, searching in earnest for evidence of genuine affection amid the years of deceit." App'x at 337, 344.

Hay approached Bolonik in the summer of 2018 and told her "that he believed he and several other men had been victimized by the Shumans." SAC ¶ 71. Bolonik published an article

---

[1] The following facts are taken from the proposed SAC, which we must take as true for purposes of this appeal.

2

titled *The Most Gullible Man in Cambridge* on July 22, 2019, and—upon receiving further stories of similar interactions with the Shumans from other people—another article titled *The Harvard Professor Scam Gets Even Weirder* on August 8, 2019. After publication, Hay "promote[d] the article and defend[ed] it from legal attacks," and he even assisted Bolonik in writing a letter "negat[ing]" the Shumans' defamation claims against the author. *Id.* ¶¶ 81, 142. Hay further agreed to solicit bids to convert the articles into a movie or TV series.

Hay has since had "a change of heart." Sp. App'x at 2. Although his SAC does not dispute that the Shumans falsely claimed his paternity of Maria-Pia's child, that the sexual assault allegations against him were fabricated, or that the Shumans fraudulently created a lease to his home, Hay objects to the way in which Bolonik characterized the Shumans. Whereas he once believed that he was a victim of a "campaign of fraud, extortion, and false accusations"—and so sued the Shumans and reported them to law enforcement—he now believes that the articles rely on a "salacious fictional portrayal of the Shumans as sexually deviant predators and Plaintiff as their clueless, gullible victim." SAC ¶¶ 12, 71. His complaint states that the Shumans were "victims of a campaign of lies directed at them, fueled . . . by prejudice" against Maria-Pia for "reject[ing] traditional notions of feminine passivity in relationships" and against Mischa for being "a transgender woman of color." *Id.* ¶¶ 24, 29, 86. Among other about-faces, Hay has retracted a claim that the Shumans made unauthorized withdrawals from his bank account—recalling now that he had in fact authorized the withdrawals. Hay has also dropped his lawsuit against the Shumans and requested that New York Media take down the two articles. Hay now says that it was Bolonik, not the Shumans, who "deceived and manipulated" Hay by turning him against the Shumans to facilitate publication of the article. *Id.* ¶ 123.

Proceeding pro se, Hay brought a diversity action against Bolonik and New York Media in

3

the United States District Court for the Southern District of New York, alleging breach of contract and violation of the New York City Human Rights Law ("NYCHRL").[2] As to the breach of contract claim, Hay contends that he entered an oral contract with Bolonik in which she made certain promises of professionalism in exchange for his willingness to come forward with the story. Bolonik allegedly breached those promises through "reliance on a single whistleblower, inadequate planning and research, failure to adhere to accepted standards of accuracy and evidence, . . . [and] failure to cross-check her preferred narrative against other sources," among other missteps. *Id.* ¶ 200. As for the NYCHRL claim, Hay alleges multiple incidents of sexual harassment by Bolonik, the details of which Hay first includes in his proposed SAC. Hay moved for leave to file the SAC, and the district court denied Hay's motion as futile. Hay, now represented by counsel, appealed the court's decision. We review de novo a denial of a motion for leave to amend as futile. *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

First, we agree with the district court that the SAC failed to state a claim for breach of contract, though we reach that conclusion on alternative grounds. *See McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000) ("This Court . . . is free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied." (cleaned up)).

It is evident from the face of the SAC that the alleged oral agreement between Hay, Bolonik, and New York Media is void under New York's Statue of Frauds. New York's Statute of Frauds provides in pertinent part:

---

[2] Hay originally also brought a defamation claim, which he drops in his proposed SAC.

4

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [b]y its terms is not to be performed within one year from the making thereof . . . .

N.Y. Gen. Oblig. Law § 5-701(a), (a)(1). Under the Statute of Frauds, an oral agreement is not enforceable if it contains terms that bind a party indefinitely. *See, e.g.*, *Myers v. Waverly Fabrics*, 475 N.Y.S.2d 860, 861 (1st Dep't 1984) (finding that the Statute of Frauds applies to a contract whereby one party was "prevented, in perpetuity, from using the [other party's] design in any manner except on fabric or on wallpaper").

Here, Hay alleges that, in consideration for Bolonik's promise that her reporting would be "professional" in that "she would bring to bear her experience . . . to ensure that the story was up to the customary ethical standards of long-form investigative journalism," Hay "agreed to cease communications with the [*New York*] *Times* and other media outlets about the story and to work exclusively with Bolonik and *New York* Magazine." SAC ¶¶ 75-76. Even drawing all reasonable inferences in Hay's favor, his promise to work exclusively with Bolonik and *New York* Magazine would bind him permanently. Nothing in the SAC suggests that Hay's obligation to refrain from working with other media outlets on the same story would terminate upon publication of Bolonik's article, or upon any other event. There is no basis on which to conclude that Hay was free upon publication of Bolonik's story to work with other publications on competing or other versions of the story. As a result, Hay's alleged contract with Bolonik and New York Media is void under the Statute of Frauds, and the SAC therefore fails to state a claim for breach of contract.

Second, the district court correctly dismissed Hay's NYCHRL claim. Hay's cause of action is precluded by *Hoffman v. Parade Publications*, 933 N.E.2d 744 (N.Y. 2010), in which the New York Court of Appeals rejected an NYCHRL claim by a Georgia resident because the case involved no "impact within" New York City. *Id.* at 746. Hay, a Cambridge, Massachusetts

resident, does not contend that any of the alleged events took place when he was inside city limits or that this suit otherwise involves his employment within New York City. There was thus no "impact" of any alleged violations within New York City, and considering Hay's claim would impermissibly "expand[] NYCHRL protections to nonresidents who have, at most, tangential contacts with the city." *Id.* at 747; *see also id.* (explaining that the "impact" requirement "confines the protections of the NYCHRL to those who are meant to be protected—those who work in the city").

We have considered the remainder of Hay's arguments and find them to be without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

6